## N. JIM QUAN v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. January 13, 1914.)

No. 2,357.

ALIENS (§ 32*)—DEPORTATION OF CHINESE—SUFFICIENCY OF EVIDENCE.

An order for the deportation of a Chinese person who held a certificate of residence as a merchant, admittedly genuine and issued to him in 1894, *held* not sustained by the contradicted testimony of a single witness that he saw defendant with other Chinese persons in Juarez, Mexico, and the absence of any evidence of his re-entry, where the witness admitted that he had never seen defendant before and defendant proved his residence at the time in the United States and testified that he had never been in Mexico.

[Ed. Note.—For other cases, see Aliens; Cent. Dig. §§ 84, 92, 93–95; Dec. Dig. § 32.*

What Chinese persons are excluded from the United States, see note to Wong You v. United States, 104 C. C. A. 538.]

Appeal from the District Court of the United States for the Western District of Texas; Thomas S. Maxey, Judge.

Proceeding by the United States against N. Jim Quan. Order of deportation, and defendant appeals. Reversed, and appellant discharged.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

W. P. McLean, of Ft. Worth, Tex., for appellant.

Charles A. Boynton, U. S. Atty., of Waco, Tex., and Robt. T. Neill, Asst. U. S. Atty., of El Paso, Tex.

Before PARDEE and SHELBY, Circuit Judges, and CALL, District Judge.

SHELBY, Circuit Judge. The appellant, a Chinaman, was arrested August 6, 1911, in El Paso, Tex., charged with being in the United States in violation of the acts of Congress, and was tried before a United States commissioner on August 22, 1911, who ordered him to be deported to the Empire of China, and this order was affirmed by the District Court.

The case is brought here by the accused on appeal:

On the hearing before the commissioner, the appellant produced a certificate of residence, which is copied in the margin.[1] No question was made as to the genuineness of the certificate, nor of the fact that the appellant was the person named in the certificate. The order of deportation is based on evidence that satisfied the commissioner and the lower court that the appellant was in Juarez, Mexico, on August 2, 1911, and the burden was on him to show that he re-entered the United States in accordance with the provisions of the act of Congress. Act of September 13, 1888, 25 Stat. 476. No return certificate was produced in evidence.

The case depends on the question of fact as to whether or not the appellant was in Mexico on August 2, 1911, as claimed by the government. Only one witness was examined to prove that fact, and on direct examination he testified as follows:

"Q. What is your name?

"A. F. H. Crockett.

---

[1] "No. 106085.                                                                                    Original.

"United States of America.

"Certificate of Residence.

"Issued to Chinese person other than laborer, under the provisions of the act of May 5, 1892.

"This is to certify that N. Jim Quan, a Chinese person other than laborer, now residing at Ennis, Tex., has made application No. 85 to me for a certificate of residence, under the provisions of the act of Congress approved May 5, 1892, and I certify that it appears from the affidavits of witnesses submitted with said application that said N. Jim Quan was within the limits of the United States at the time of the passage of said act, and was then residing at Dallas, Texas, and that he was at that time lawfully entitled to remain in the United States, and that the following is a descriptive list of said Chinese person other than laborer, viz.: Name: N. Jim Quan. Age: 25 years. Local Residence: Ennis, Tex. Occupation: Merchant. Height: 5 ft. 4¼ inches. Color of Eyes: Brown. Complexion: Yellow. Physical Marks or Peculiarities for Identification: Scar left of left eye and scar on right cheek.

"And as a further means of identification, I have affixed hereto a photographic likeness of said N. Jim Quan.

"Given under my hand and seal this 16th day of February, 1894, at Dallas, state of Texas.

"J. L. Doggett,
"Collector of Internal Revenue,
"4th District of Texas."

"Q. Mr. Crockett, you are in the immigration service?

"A. Yes, sir.

"Q. And you know this defendant, this Chinese—the one with the scar on his face?

"A. Yes, sir.

"Q. When did you first see him?

"A. August 2d, in Juarez.

"Q. In Juarez, Mexico?

"A. Yes, sir.

"Q. Did he get off the train there?

"A. Yes, sir.

"Q. At what time?

"A. At 5 o'clock or thereabouts.

"Q. Have you any doubt as to the identity of the man?

"A. No, sir.

"Q. Why do you identify him?

"A. When he with six or seven Chinese got off the train, I looked to see if I could see any I knew, and to know them if I saw them on this side. I noticed this man on account of the scar, his size; he stood a little stooped and had red around the pupils of his eyes.

"Q. Come over here, Mr. Crockett. How close were you to him?

"A. As close as that man.

"Q. Say five feet?

"A. Yes, five or six feet from him.

"Q. Have you any doubt as to this man being the man you saw in Juarez?

"A. I have not."

On cross-examination, he testified that he had only been in the government service since July 26, 1911; that he never saw appellant till August 2d; that he saw five or six Chinamen get off a train in Juarez; that appellant was one of them; that his only opportunity to see him was as he walked by the witness; that this occurred about 5 o'clock in the evening; that he identifies appellant "by the scar on his face, the size of the man, his eyes, and the way he stands up." The witness admitted that he would be unable to identify any one of the other five or six Chinamen that he saw on that occasion. The next time the witness saw appellant was in El Paso. He did not arrest him. "I wanted to get an older man who knew more about it." He knew, however, that he was arrested on August 6th.

The appellant was examined as a witness, identified his certificate, and said he had lived in the United States since he was a small boy, naming the towns in which he had lived and the work in which he was engaged in each town; that he had lived in El Paso for only five or six months, and named his place of residence in El Paso. He called ed witnesses to corroborate him as to his residence in El Paso. The appellant swore positively that he was not in Juarez, Mexico, on August 2, 1911, and that in fact he had "never in his life been in Mexico." It will be observed that the certificate produced by the appellant described him as having a "scar left of left eye and scar on right cheek"; that is, that he had on his face two scars, and the location of each is given. The government witness describes the Chinaman he saw in Juarez as having a "scar on his face." There is no other effort to identify him with the careful description in the certificate, and yet it is not denied that the certificate is genuine and that it was issued to the appellant. Evidence of the identity of persons is often very uncertain

and unsatisfactory even when careful effort is made to make it satisfactory and certain.

To comment on this evidence further would be useless. We can only say that, on careful consideration of it, after giving full weight to the fact that the commissioner and the court below came to a different conclusion, we are constrained to believe that the appellant was not satisfactorily proved to have been in Mexico on August 2, 1911, and that, on the evidence in the record, he should not have been ordered to be deported.

The order is reversed, and the appellant is discharged.

Reversed.